**DECLARATION OF MAURKICE FOYE**

**IN SUPPORT OF SECOND AMENDED CIVIL RIGHTS COMPLAINT**

**AND IN OPPOSITION TO ANY MOTION TO DISMISS**

*(28 U.S.C. § 1746)*

**I, Maurkice Foye,** declare under penalty of perjury that the following is true and correct:

---

## 1. Identity

1. I am the Plaintiff in this action.

2. I am competent to testify to the matters stated here.

3. All statements are based on my personal knowledge.

---

## 2. Purpose of This Declaration

4. I submit this declaration to provide sworn clarification and additional facts that support my complaint and show why all claims—old and new—are properly before the Court.

5. This declaration also explains why **res judicata does not apply**, why new constitutional violations occurred after my earlier lawsuits, and why the claims in this action are based on **new misconduct, new defendants, and newly discovered facts.**

## BACKGROUND FACTS

### 3. The 2021 Incident

6. On October 6, 2021, I was detained without probable cause by officers of the
   Robeson County Sheriff's Office.

7. I was not involved in the reported shooting and was simply present at a residence
   when officers arrived.

8. Officers searched the property without a warrant.

9. The homeowner stated the firearm belonged to her, not me.

10. Detective Matthew Lassiter coerced me into signing a consent form by threatening
    that refusing would "make things worse."

11. I intentionally misspelled my name on the form to show I was acting under coercion.

12. I was charged and jailed for four days, and I was forced to defend myself in court for
    over a year until all charges were dismissed.

### 4. My Earlier Lawsuits Did Not Include All Facts

13. My earlier lawsuits were dismissed on **November 15, 2023**, and **January 3, 2025**.

14. During those cases, I did **not** know all the facts, did not know which officers were involved, and did not know their specific roles.

15. I did **not** know that First Sergeant Lewis, Deputy Andrews, or Deputy Vazquez had participated in the incident.

16. I also did not know the full extent of Lassiter's coercion or the supervisory failures behind the arrest.

---

## NEW FACTS & NEW MISCONDUCT DISCOVERED AFTER PRIOR SUITS

---

### 5. The December 2022 Threat (NEW CONSTITUTIONAL VIOLATION)

17. In **December 2022**, after my wrongful prosecution ended, I went to the Sheriff's Office to ask questions about why I had been charged.

18. During this meeting, **Major James Obershea** threatened me directly.

19. Obershea stated:

   **"I'm going to call my buddy in the DA's office and have them reopen the case."**

20. This was said in an angry, intimidating manner.

21. The threat was clearly intended to silence me from asking questions or filing complaints.

22. This was a **new** and **separate** constitutional violation, not part of the original arrest.

23. This threat occurred **after** my earlier lawsuit was filed and was never litigated or addressed by any court.

---

## 6. Interference With My Right to Petition and Access the Courts (2023–2025)

24. After the threat, whenever I tried to ask questions or file documents, I was met with hostility and unwelcoming behavior from officers in the same department.

25. Officers made me feel uncomfortable and intimidated for trying to pursue my rights.

26. In 2023, 2024, and 2025, I submitted multiple public records / FOIA requests about my case.

27. The Sheriff's Office **failed to respond, refused to provide status updates**, and **ignored my lawful requests**.

28. This is willful obstruction and a denial of my right to access public records.

29. These events occurred entirely **after** my earlier lawsuits and therefore could not have been included in them.

---

## 7. Newly Discovered Evidence About the 2021 Incident

30. My understanding of the officers' roles, misconduct, and motives only became clear in late 2023 and 2024.

Exhibit 1

31. I did not know the identities or involvement of Lewis, Andrews, or Vazquez until well after my earlier filings.

32. I did not know that Lassiter admitted to charging me "because he could" and not based on evidence.

33. I did not have access to full information about the improper search, supervisory failures, or retaliatory motives until long after the prior cases were closed.

---

## CONTINUING VIOLATION

---

### 8. Misconduct Did Not End in 2021 — It Continues Today

34. The 2021 arrest was only the beginning of an ongoing pattern of unconstitutional conduct.

35. The December 2022 threat showed the department's intent to intimidate me into silence.

36. The refusal to provide public records throughout 2023–2025 is part of the same pattern.

37. The hostile, unprofessional treatment I received when submitting paperwork in 2024 and 2025 further demonstrates ongoing retaliation.

38. Because the wrongdoing continued across multiple years, the entire sequence constitutes a **continuing violation**.

---

## RES JUDICATA DOES NOT APPLY

---

### 9. Reasons Older Claims Are NOT Barred

39. The new misconduct (2022–2025) occurred **after** my earlier lawsuits.

40. The new defendants were not parties to earlier cases.

41. The constitutional injuries from the December 2022 threat and later obstruction were not litigated before.

42. Major facts were not known or discoverable during prior suits.

43. The pattern of retaliation shows a unified, ongoing violation.

44. New legal theories—such as First Amendment retaliation, access-to-courts violations, supervisory liability, Monell liability, and obstruction of justice—were not part of my earlier filings and could not have been fully raised.

45. For these reasons, res judicata does NOT bar any claim in this lawsuit.

---

### 10. Summary

46. My complaint includes both older claims and new constitutional violations because all are connected to a continuing pattern of retaliation and misconduct by the Robeson County Sheriff's Office.

47. This declaration is submitted to clarify the full timeline of events and preserve all 14 claims.

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on: 25 November, 2025

Case # 5:25-ct-3077

*Maurkice Foye*

**Maurkice Foye**

Plaintiff Pro Se

Exhibit G

OCN· 2021-05180

Date: 10-6-21

Time: 10:18 A.m.

██████████ Chatman
████████ Lot 29

Lumberton NC 28360

DOB: ████ B/F

PH0—

Interview Location: Patrol vehicle.

*Maurice foye* (signature)

Maurkice foye

On October, 6, 2021 at around 9:30 A.m.
me and my boyfriend Maurkice Foye got into a
verbal Altercation. Maurkice and I have been
dating for about 3 years. we having been living together
for about 3 months. Then Our Altercation started
because I found out Maurkice had been texting other
girls. I confronted maurkice about texting and
we were arguing. and I was throwing things
around the house because I was upset. Maurkice
was calm for a while. I started saying things. we
began chasing me around the house. I started
calling Maurkice names like "Bitches motherfucker"
we started fighting In the living room. I hit Maurkice
first and thats what started the fight. I was pacing
around and ended up in the bedroom. I was pacing
because I was mad. when I got in the bedroom.
I raised the window so I could get out. I keep
holler and cussing at Maurkice. Maurkice started
to the bedroom so I went out the window
and ran to the back door. I didn't hear any
gun shots.

# INCIDENT REPORT
## PUBLIC COPY

| | |
|---|---|
| **Agency Name** | **Case#** 2021-05180 |
| *Robeson Co. Sheriff's Office* | **Date / Time Reported** 10/06/2021 08:57 Wed |
| **ORI** NC0780000 | **Last Known Secure** 10/06/2021 08:56 Wed |

**Location of Incident:** ▮▮▮▮ Lumberton NC | **Gang Relat** NO | **Premise Type** Residence/home | **P ZONE/D ZONE** | **At Found** 10/06/2021 08:57 Wed

### INCIDENT DATA

**#1 Crime Incident(s)** *Assault By Pointing A Gun* (Com) — **Weapon / Tools** Handgun — **Activity** N
14-34
**Entry** | **Exit** | **Security**

**#2 Crime Incident** ( ) — **Weapon / Tools** — **Activity**
**Entry** | **Exit** | **Security**

**#3 Crime Incident** ( ) — **Weapon / Tools** — **Activity**
**Entry** | **Exit** | **Security**

**MO**

### VICTIM

**# of Victims** 1 | **Type:** Individual (not a LE Officer) | **Injury:** Apparent Minor Injury

| V1 | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | CHATMAN, ▮▮▮ | 1, | Age ▮ | ▮ | ▮ | IBG | Resident | |

**Home Address** ▮▮▮ Lumberton, NC 28360- | **Email** | **Home Phone**
**Employer Name/Address** | **Business Phone** | **Mobile Phone**

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

### OTHERS INVOLVED

**CODES:** V- Victim (Denote V2, V3) | WI = Witness | IO = Involved Other | RP = Reporting Person (if other than victim)

**Type:** Individual (not a LE Officer) | **Injury:**

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| RP | SMITH, CALEB J | | Age ▮ | ▮ | ▮ | | Non-Resident | |

**Home Address** 1100 CENTER ST. FAYETTEVILLE, NC 28306 | **Email** | **Home Phone** ▮
**Employer Name/Address** | **Business Phone** | **Mobile Phone** ▮

**Type:** | **Injury:**

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | | | Age | | | | | |

**Home Address** | **Email** | **Home Phone**
**Employer Name/Address** | **Business Phone** | **Mobile Phone**

### PROPERTY

**1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown**
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| 1 | I9 | EVID | $1.00 | | 1 | TAURUS G3 9MM HANDGUN | 9MM/TAURUS/G3 | ACG00162 |

### STATUS

**Officer/ID#** ANDREWS, J. G. (MAJ, MC) (JA3218)
**Invest ID#** LASSITER, S. M. (DET, MC) (SL4384) | **Supervisor** BUFFKIN, R. D. (PAT, PAT) (RB2776)
**Complainant Signature** | **Case Status** Open | 10/07/2021 | **Case Disposition:** | **Page** 1

R_CS1IBR | **Printed By:** SB7754, B WILKINS | **Sys#:** 279381 | 12/12/2022

⊛ = Contradictions

⊖ = Hearsay/Speculation

Exhibit I

Maurice Foye *(signature)*
Maurrice Foye



# INVESTIGATOR STATEMENT

OCA: 2021-05180

DATE: 02/25/2022

DET. MATTHEW LASSITER

DEFENDANT: MAURKICE FOYE

THIS REPORT CONTAINS INFORMATION REGARDING A DOMESTIC DISTURBANCE THAT OCCURRED AT 616 MOSSNECK RD. IN LUMBERTON, NC LOT 29, ON WEDNESDAY, OCTOBER 06, 2021.

JAKIYA CHATMAN STATED SHE HAS BEEN WITH HER BOYFRIEND MAURKICE FOYE FOR ABOUT 3 YEARS. CHATMAN STATED THEY WERE HAVING AN ARGUMENT THIS MORNING. CHATMAN STATED SHE JUMPED OUT THE WINDOW OF HER TRAILER. CHATMAN STATED SHE HEARD A GUNSHOT BUT ⊛ DID NOT KNOW WHERE IT COME FROM.

MAURKICE FOYE STATED HIMSELF AND HIS GIRLFRIEND JAKIYA CHATMAN WERE HAVING AN ARGUMENT THIS MORNING OVER FACEBOOK MESSAGES ON HIS PHONE. FOYE STATED THERE WAS A GUN IN THE HOUSE.

CALEB SMITH STATED HE WAS DOING WORK IN THE TRAILER PARK WHEN HE HEARD A FEMALE SCREAMING. SMITH STATED HE HEARD ONE- OR TWO-GUN SHOTS COME FROM THE DIRECTION OF THE FEMALE SCREAMING. SMITH STATED HE LOOKED AT THE TRAILER AND SAW A FEMALE JUMP OUT A WINDOW AND START SCREAMING FOR HELP. SMITH STATED THE FEMALE RAN TO THE BACK OF THE TRAILER. SMITH STATED HE SAW A MALE SUBJECT GO OUT OF THE HOUSE TO THE FEMALE AND PULL HER BACK INTO THE HOUSE. SMITH STATED HE CALLED 911.

ON WEDNESDAY, OCTOBER 06, 2021, DEPUTY ANDREWS WAS DISPATCHED TO 616 MOSSNECK RD. LUMBERTON, NC LOT 29 IN REFERENCE TO A DOMESTIC DISTURBANCE WITH SHOTS ⊖ FIRED. WHEN DEPUTY ANDREWS ARRIVED, DEPUTY ANDREWS OBSERVED THE ADDRESS TO BE A SINGLEWIDE MOBILE HOME WITH THE FRONT DOORWAY SLIGHTLY OPEN AND A FRONT WINDOW OPEN WITH THE WINDOW DRAPES PUSHED OUTSIDE. DEPUTY ANDREWS KNOCKED ON THE SIDE OF THE MOBILE HOME AND VERBALLY ANNOUNCED HIS PRESENCE. DEPUTY ANDREWS OBSERVED THE SLIGHTLY OPEN FRONT DOOR CLOSE SHUT. DEPUTY ANDREWS CONTINUED TO REQUEST ANYONE INSIDE THE RESIDENCE TO COME OUT AS HE CALLED FOR ANOTHER UNIT TO HIS LOCATION. DEPUTY ANDREWS CHECKED AROUND THE OUTSIDE OF THE RESIDENCE AND COULD HEAR MOVING FROM INSIDE THE RESIDENCE. AS DEPUTY ANDREWS WAITED FOR ANOTHER UNIT TO ARRIVE, THE FRONT DOOR OF THE RESIDENCE OPENED, AND A BLACK FEMALE EXITED THE RESIDENCE.

DEPUTY ANDREWS REQUESTED THE BLACK FEMALE COME TOWARDS HIM AS HE STOOD A ⊖ DISTANCE FROM THE RESIDENCE. AS THE BLACK FEMALE GOT CLOSER TO DEPUTY ANDREWS, HE COULD OBSERVE THE BLACK FEMALE HAD A SWOLLEN LEFT EYE WITH MARKS AROUND IT. DEPUTY ANDREWS ASKED THE BLACK FEMALE IF ANYONE ELSE WAS INSIDE THE RESIDENCE THEN OBSERVED A BLACK MALE EXIT THE FRONT DOOR OF THE RESIDENCE. DEPUTY ANDREWS WALKED OVER TO THE



*No Weapons*

BLACK MALE AND CHECKED HIM FOR WEAPONS, AFTER CHECKING THE BLACK MALE FOR WEAPONS, DEPUTY ANDREWS DETAINED THE BLACK MALE BY PLACING HIM INTO HANDCUFFS. DEPUTY ANDREWS IDENTIFIED THE BLACK MALE AS MAURKICE DOCK ARMAAN FOYE B/M DOB:09/01/1999. DEPUTY ANDREWS PLACED FOYE IN THE PASSENGER AREA OF HIS PATROL VEHICLE THEN RETURNED TO SPEAK WITH THE BLACK FEMALE.

DEPUTY ANDREWS IDENTIFIED THE BLACK FEMALE AS JAKIYA CHATMAN B/F DOB: DEPUTY ANDREWS WAS ASSISTED BY DEPUTY VAZQUEZ AS A SECURITY CHECK OF THE RESIDENCE WAS PERFORMED. DEPUTY VAZQUEZ HAD ALREADY BEEN TOLD ABOUT THE LOCATION OF THE FIREARM FROM CHATMAN WHICH WAS IN THE OPEN KITCHEN CABINET. DEPUTY ANDREWS COLLECTED THE FIREARM FOR SAFE KEEPING AS DEPUTY VAZQUEZ CHECKED TO SEE IF THE FIREARM WAS STOLEN BY RUNNING THE SERIAL NUMBER WITH ROBESON COUNTY COMMUNICATIONS. THE FIREARM IS A TAURUS G3 9MM SERIAL NUMBER: ACG001624. AFTER THE FIREARM CAME BACK AS NOT STOLEN, DEPUTY ANDREWS SECURED THE FIREARM IN HIS PATROL VEHICLE.

*— They knew where the firearm was before searching the entire house*

FIRST SERGEANT LEWIS ARRIVED ON LOCATION AND DEPUTY ANDREWS ADVISED HIM OF THE SITUATION. FIRST SERGEANT LEWIS ADVISED DEPUTY ANDREWS; DETECTIVE LASSITER WAS ENROUTE TO TAKE OVER THE CASE. AFTER DETECTIVE LASSITER ARRIVED ON LOCATION AND CONDUCTED HIS INVESTIGATION, DEPUTY ANDREWS TRANSPORTED FOYE TO THE ROBESON COUNTY SHERIFF'S OFFICE AND HANDED HIM OVER TO DETECTIVE LASSITER. DEPUTY ANDREWS PLACED THE FIREARM INSIDE EVIDENCE AT THE ROBESON COUNTY SHERIFF'S OFFICE.

*Only Detained →*

ON OCTOBER 6,2021 I DET LASSITER RECEIVED A CALL TO RESPOND TO 616 MOSS NECK RD LOT 29 IN REFERENCE TO A DOMESTIC THAT HAD OCCURRED. UPON ARRIVING ON SCENE, I SPOKE WITH DEPUTY ANDREWS WHO BRIEFED ME ON THE EVENTS THAT HAD TAKEN PLACE. ANDREWS ADVISED ME THAT FOYE HAD BEEN DETAINED AND THAT THERE WAS A FIREARM INSIDE THE RESIDENCE AND THAT FOYE WAS A CONVICTED FELON.

WHILE ON SCENE I CONDUCTED AN INVIEW WITH JAKIYA CHAT WHILE SITTING IN MY PATROL VEHICLE AT THE ADDRESS OF 616 MOSS NECK RD LOT 29 LUMBERTON NC. CHATMAN STATED THAT HER AND HER BOYFRIEND OF THREE YEARS GOT INTO A VERBAL ALTERCATION. CHATMAN STATED THAT HER AND FOYE HAD BEEN LIVING TOGETHER FOR ABOUT THREE MONTHS. CHATMAN STATED THAT HER AND FOYE HAD BEEN ARGUING BECAUSE SHE FOUND OUT THAT FOYE HAD BEEN TEXING OTHER GIRLS. CHATMAN STATED THAT THEY WERE ARGUING AND THAT SHE STARTED THROWING THINGS AROUND THE HOUSE BECAUSE SHE WAS UPSET. CHATMAN STATED THAT FOYE WAS CALM FOR A WHILE. CHATMAN STATED THAT SHE STARTED SAYING THINGS AND THAT FOYE BEGAN CHASING HER AROUND THE HOUSE. CHATMAN STATED THAT SHE STARTED CALLING FOYE "BITCHES" AND "MOTHERFUCKERS" AND THEY STARTED FIGHTING IN THE LIVINGROOM. CHATMAN STATED THAT SHE HIT FOYE FIRST AND THAT'S WHAT STARTED THE PHYSICAL ALTERCATION. CHATMAN STATED THAT SHE STARTED PACING AROUND THE HOUSE BECAUSE SHE WAS MAD. CHATMAN STATED THAT SHE WENT TO THE BEDROOM AND RAISED THE WINDOW SO THAT SHE COULD GET OUT THE HOUSE. CHATMAN STATED THAT SHE WENT OUT THE WINDOW AND RAN TO THE BACK DOOR. CHATMAN STATED THAT SHE NEVER HEARD A GUNSHOT OR SEEN FOYE WITH THE GUN. CHATMAN STATED THAT HER AND FOYE ARGUE AT LEAST TWICE A WEEK.

MAURKICE FOYE WAS TRANSPORTED TO THE ROBESON COUNTY SHERIFF'S OFFICE FOR PROCESSING. FOYE WAS READ HIS MIRANDA RIGHTS AND AGREED AND SIGNED HIS RIGHTS AGREEING TO SPEAK WITH ME. FOYE STATED THAT HE AND HIS GIRLFRIEND GOT INTO A HEATED ARGUMENT OVER SOMEONE MESSAGING HIM ON FACEBOOK. FOYE STATED THAT HIS GIRLFRIEND OWNED A GUN AND THAT HE NEVER KNOWS WHERE SHE KEEPS IT BECAUSE HE IS A CONVICTED FELON. FOYE STATED THAT THERE WAS NO PHYSICAL ALTERCATION THAT THE ALTERCATION WAS ONLY VERBAL. FOYE STATED THAT THE GUN WAS NEVER INVOLVED IN THE INCIDENT. FOYE STATED THAT HE TOLD THE MALE DEPUTY THAT THERE WAS A FIREARM IN THE HOUSE. FOYE STATED THAT THE GUN WAS A 9MM THAT HE DIDN'T KNOW WHAT KIND OF GUN IT WAS. FOYE STATED THAT CHATMAN HAD THE GUN FOR ABOUT 3 WEEKS. FOYES BROTHERS GIRL FRIEND PURCHASED THE GUN FOR CHATMAN. FOYE DENIED THAT HE HAS EVER HELD THE GUN OR SHOT THE GUN. FOYE STATED THAT CHATMAN ATTEMPTED TO LEAVE THE RESIDENCE THROUGH THE FRONT DOOR. FOYE STATED THAT HE STOPPED CHATMAN AND SAID WE GONE TALK. FOYE STATED THAT CHATMAN WENT TO THE BEDROOM AND WENT OUT THE WINDOW. FOYE DENIED HAVING A FIST FIGHT WITH CHATMAN IN THE LIVINGROOM. FOYE STATED THAT HE DIDN'T KNOW WHERE THE FIREARM WAS LOCATED. FOYE STATED THAT HE DIDN'T KNOW THAT CHATMAN HAD LEFT OUT THE WINDOW. FOYE WAS CHARGED WITH POSSESSION OF FIREARM BY CONVICTED FELON AND SIMPLE ASSAULT ON A FEMALE. FOYE WAS TAKEN BEFORE A MAGISTRATE WHERE HE RECIEVEFD A 10,000.00 DOLLAR SECURED BOND FOR THE POSSESSION OF FIREARM BY CONVICTED FELON AND A NO BOND FOR THE ASSAULT ON A FEMALE.

Maurkice Foye

Maurkice Foye

**EXHIBIT J**

**Absence of Probable Cause and Exculpatory Evidence Demonstrating Unlawful Arrest**

**(October 6, 2021 Incident)**

### I. Overview

This exhibit explains why the Defendants lacked probable cause to detain, seize, or arrest Plaintiff on October 6, 2021. It incorporates the factual allegations, sworn statements, and exculpatory evidence detailed in the Second Amended Civil Rights Complaint and demonstrates that the arrest was unlawful from the outset.

---

### II. Legal Standards for Probable Cause in Warrantless Arrests

Under the Fourth Amendment and N.C. Gen. Stat. § 15A-401(b), officers may make a warrantless arrest only if:

1. They have **probable cause** to believe the arrestee committed a crime, and

2. They can **articulate specific facts** supporting that belief at the time of arrest.

Probable cause **cannot be created afterward**, nor can it rest on coercion, assumptions, or unsupported accusations. When officers ignore clear, immediate exculpatory evidence, probable cause evaporates as a matter of law.

---

### III. Probable Cause Was Absent and Contradicted by Immediate Exculpatory Evidence

At the moment Plaintiff was detained and arrested on October 6, 2021, officers had **zero lawful basis** to believe Plaintiff committed a weapons offense, discharged a firearm, or possessed the weapon found inside the residence. The following facts—available to officers **at the scene**—destroy any notion of probable cause:

---

### 1. Plaintiff Was Merely Present and Complied

Plaintiff had simply been visiting a friend's home. When officers arrived, Plaintiff **voluntarily exited the residence** and stood by his vehicle. Compliance and mere presence **cannot** form probable cause for a gun-related offense.

---

### 2. The Homeowner Provided Immediate Exculpatory Evidence

The homeowner explicitly told officers that:

- **She owned the firearm,**

- *Plaintiff* **did not,**

- Plaintiff had **never possessed it,**

- *Plaintiff had **never been seen handling it**,* and

- Plaintiff had **no involvement** with the weapon.

A victim/owner statement of this nature is one of the strongest forms of exculpatory evidence recognized by courts. Officers **cannot disregard** such direct ownership admissions.

---

### 3. The Firearm Was Not Found on Plaintiff, Near Plaintiff, or in His Vehicle

The gun was discovered **inside the home**, not:

- on Plaintiff's person,

- in Plaintiff's immediate vicinity,

- in Plaintiff's vehicle,

- within Plaintiff's reach, or

- anywhere suggesting dominion or control.

This eliminates **actual possession.**

---

### 4. Plaintiff Knew the Homeowner Owned a Firearm, but Had No Knowledge of Its Location

Constructive possession requires *knowledge of the presence and location* of the item.

Plaintiff:

- **Was aware** the homeowner owned a firearm,

- **Was not aware** where the firearm was kept inside the residence,

- **Had no access** to any area where the firearm was found.

Without knowledge + access + control, constructive possession **cannot** exist.

---

### 5. Plaintiff Had No Authority Over the Residence

Probable cause requires a logical connection between the defendant and the location of the evidence. But Plaintiff:

- Did **not** live at the home,

- Did **not** own the home,

- Did **not** control the home,

- Had **no authority** to give consent to search the home.

The absence of any possessory right or control is fatal to a possession-based charge.

---

### IV. Invalid Consent and Improper Creation of Probable Cause After the Arrest

### 1. Plaintiff Had No Legal Authority to Consent

Despite knowing Plaintiff **was not the homeowner,** Detective Lassiter coerced Plaintiff into signing a "consent to search" form:

- Plaintiff could **not** legally consent to the search of property he did not own or control.

- Consent obtained from a non-owner is **invalid** as a matter of law.

The invalid consent form could not support probable cause and should not have been used as justification for any search, arrest, or charge.

---

## 2. Consent Was Obtained Through Coercion

Detective Lassiter told Plaintiff:

"I'm charging you because I can, and you shouldn't make things worse for yourself."

Plaintiff misspelled his own name **intentionally** to signal coercion.

Coercion + lack of authority = **null and void consent**. Any "probable cause" derived from the coerced form is **illegitimate**.

---

## 3. Officers Manufactured Probable Cause After the Fact

Instead of relying on evidence, the officers:

- Ignored the homeowner's exculpatory statements,

- Ignored the lack of any evidence linking Plaintiff to the firearm,

- Ignored the fact that Plaintiff had no authority over the home,

- Detained Plaintiff without probable cause,

- Only **after detaining him** sought invalid "consent" to justify the arrest,

- Charged Plaintiff despite **zero evidence** tying him to the weapon,

- Allowed the case to continue for over a year without showing up to court.

This is not policing — it is **retaliatory, pretextual, fabricated enforcement**.

---

## V. Conclusion

Based on the facts available to officers at the time:

- No reasonable officer could believe Plaintiff possessed the firearm;

- No reasonable officer could associate Plaintiff with the weapon's location;

- No reasonable officer could treat coerced, unauthorized consent as lawful;

- *No reasonable officer could ignore the homeowner's direct exculpatory statements.*

Thus, Plaintiff's October 6, 2021 arrest was **unlawful,** unsupported by probable cause, and executed through fabricated and retaliatory means.

## VI. Detective Lassiter's False Statements to the Magistrate and the Fabrication of Probable Cause

Upon Plaintiff's arrival at the jail for booking on October 6, 2021, Detective Matthew Lassiter knowingly and intentionally presented the magistrate with **false, misleading, and**

**incomplete information** in order to secure a criminal warrant that lacked any factual

basis. Rather than providing the magistrate with the actual evidence gathered at the scene,

Lassiter withheld all exculpatory facts, including:

- That the **homeowner explicitly stated** the firearm belonged solely to her and that Plaintiff had **never possessed,** handled, or been seen near the weapon;

- That the firearm was found **inside the residence,** not on Plaintiff, near Plaintiff, or within Plaintiff's reach or control;

- That Plaintiff had **no authority or ownership interest in the home,** meaning he could not legally consent to a search and could not logically be considered in possession of items inside the residence;

- That Plaintiff knew the homeowner owned a firearm but had **no knowledge of where it was stored,** defeating any theory of constructive possession;

- That the "consent" obtained was the result of **coercion,** after Lassiter threatened Plaintiff and induced him to sign a form he had no authority to execute.

Despite the absence of probable cause, Lassiter falsely represented to the magistrate that

Plaintiff had committed a firearms offense. By omitting critical exculpatory information and

fabricating a narrative inconsistent with the facts known to officers at the scene, Lassiter

caused the magistrate to issue a warrant that **would not have been issued had the truth**

**been presented.**

Lassiter's actions constitute the intentional creation of false evidence, a violation of Plaintiff's rights under the **Fourth and Fourteenth Amendments**, and unlawful conduct under **Franks v. Delaware,** which prohibits law enforcement from obtaining warrants through false statements or material omissions. His conduct further supports Plaintiff's claims for:

- **False arrest,**

- **Malicious prosecution,**

- **Fabrication of evidence,**

- **Abuse of process,**

- *Due process violations,* and

- **Retaliatory and unconstitutional law enforcement practices.**

By lying to the *magistrate and manufacturing probable cause after the arrest had already occurred,* Lassiter attempted to legitimize an unlawful seizure and shield the misconduct of officers who acted without any legal justification. This deliberate deception underscores the unconstitutional nature of Plaintiff's arrest and subsequent prosecution.